## TURNER et al. v. BARNES. (No. 12131.)

Court of Civil Appeals of Texas. Fort Worth. April 13, 1929.

Rehearing Denied May 18, 1929.

W. O. Davis, of Gainesville, and Joe S. Gambill, of Denton, for appellants.

Sullivan-Speer & Minor, of Denton, for appellee..

CONNER, C. J. Appellee, J. H. Barnes, instituted this suit in the district court of Denton county against the appellant S. R. Turner and the American Surety Company of New York.

The plaintiff alleged: "That during the years 1921 to 1924, both inclusive, this plaintiff was the duly elected, acting and qualified collector of the county and state taxes in and for Denton County, Texas, and that such officer had functioned and performed the duties and had the responsibilities incident to that office. * * * That during the term of his office he prepared annual and delinquent lists of taxes assessed against the respective owners of property in Denton County as disclosed by the tax rolls thereof, and separated the property previously sold to the State from that reported sold as delinquent for preceding years and pro rated the state taxes into state revenue, state school and state pension, calculated the penalty extended and added it in with other taxes, balanced the delinquent lists and certified it to the commissioner's court, and to the Comptroller, and did and perform all other services and duties incumbent upon the tax collector of such counties like that of Denton in connection with the making up of all lists, rolls and computations relative to the delinquent taxes against property in Denton County, and that after the last term of his said office expired, he made full and satisfactory settlement with Denton County and the State of Texas and those authorized by law to represent said county and state for all moneys collected by him as such tax collector, but that he did not receive compensation either from the state or county for the services performed by him in connection with the making up of the rolls, separating lists and other services hereinbefore set out as performed in connection with the delinquent tax rolls and more especially those items hereinafter specifically set out and enumerated."

The plaintiff further alleged: That in the general elections held in November, 1924 and 1926, respectively, the defendant S. R. Turner was duly elected to the office of tax collector of Denton county and duly qualified as such on December 24, 1924, and on December 20, 1926, and entered into the usual, customary, legal, and official bonds with the defendant American Surety Company of New York as surety. That the defendant Turner began his first term of office as tax collector on the 1st day of January, 1925, and began the second term of office as such tax collector on the 1st day of January, 1927, and collected fees that were earned by plaintiff in the principal sum of $638, which said Turner was unlawfully withholding from the plaintiff, though often requested to pay the same. A list of the taxes so collected and alleged to belong to the plaintiff was attached as an exhibit to plaintiff's petition.

The defendant, among other pleas not thought to be necessary to notice, pleaded demurrers and a general denial.

The trial was before the court without a jury, and the court filed in answer to request the following findings of fact and conclusions of law:

"1. I find from the evidence before me that plaintiff, J. H. Barnes, was tax collector for Denton County from January 1, A. D. 1921, to December 1st, A. D. 1924; that some time during the year 1921 and during the first half of 1923, he compiled the delinquent tax rolls for Denton County, separating the property previously sold to the state from that reported sold as delinquent for preceding years and pro-rated the state taxes into state revenue, state school and state pension, calculated the penalty, extended and added same in with the other taxes, balanced the delinquent lists and certified the same to the Commissioners' Court

of Denton County and the State Comptroller.

"2. That subsequent to the expiration of plaintiff's last term, Denton County sued him for about Twelve Thousand ($12,000.00) Dollars claimed by the County to be due it as by an audit of Barnes' books during the four years he held the office of tax collector and that on the 10th day of March, A. D. 1926, an agreed judgment was entered in the case against Barnes and the sureties on his official bond for the sum of Sixty-six Hundred and 00/100 ($6,600.00) Dollars in full satisfaction of all matters in controversy, and the judgment recited payment had that day been made and ordered that no execution should issue.

"3. That on the 3rd day of March, A. D. 1926, the Commissioners' Court entered an order in its own minutes to the effect that the controversy with Barnes was the result of a difference of opinions between courts and officers as to what items were included in, and should be accounted for under the fee bill, and further reciting that the court reposed the utmost confidence in the integrity of the said Barnes and that it was deemed advisable to accept the sum of Sixty-six Hundred and 00/100 ($6,600.00) Dollars from Barnes in full settlement of the county's claim against him, and authorized its attorneys to have entered, by mutual agreement with Barnes, a judgment in the District Court of Denton County, Texas, for that amount.

"4. The audit of Barnes' accounts showed he had collected, while in office in costs accruing to his predecessors Six Hundred Twenty ($620.00) Dollars for the fees and costs for compiling delinquent tax records, and this item was included in the amount paid to the county in the agreed judgment.

"Barnes, at the instance of the Commissioners' court also procured and furnished to that court a release of all claims for fees that he held, belonging to his two immediate predecessors, covering a period of eight years.

"5. On January 1, A. D. 1925, the defendant became the Tax collector for Denton County and was re-elected at the end of two years and again qualified for a second term on January 1st, A. D. 1927, and that he is at this time such collector, his second term not having expired.

"That the defendant, American Surety Company of New York, was and is surety on S. R. Turner's official bond during both terms.

"6. That during the time defendant, S. R. Turner, has been the Tax Collector for Denton County, he has collected delinquent taxes from many persons upon property shown upon the two delinquent tax lists compiled by plaintiff J. H. Barnes while he was tax collector, and that from each such person, he, the defendant, S. R. Turner, has collected the sum of One Dollar ($1.00) as costs for each correct assessment so listed and compiled by Barnes, and that he has collected such costs and fees in the sum of Six Hundred Thirty-eight and 00/100 ($638.00) Dollars.

"7. That four years have not elapsed since any portion of said amount was so collected by Turner and that Barnes has claimed said fees and costs and filed suit herein for it before the expiration of four years next after the said Turner collected the first part of same.

"Conclusions of Law.

"1. That the costs and fees for which plaintiff has sued the defendant were earned by the plaintiff and are payable to him by the defendant.

"2. Giving full faith and credit to the judgment in the case of Denton County vs. J. H. Barnes introduced in evidence, it must be presumed that the interest of the county, if any it ever had, in the fees involved in this suit, was considered and adjusted and all claims of the county to any part of said fees were settled by said judgment.

"3. The plaintiff being thus entitled to the fees in question free from any claim on the part of the county, it was the duty of the defendant to collect and pay the same to the plaintiff and the defendant having collected said fees and refused on demand to pay the amount so collected to the plaintiff, the plaintiff is entitled to judgment as prayed for."

In the case of Bond v. Poindexter, 116 S. W. 395, the Dallas Court of Civil Appeals held that fees on delinquent taxes collected by a deceased tax collector's successor were held by such successor in trust for the deceased collector's heirs. We feel unable, however, to say that the case is applicable to the facts now before us. That opinion was rendered February 27, 1909, and fails to disclose the character of fees so collected or the law by virtue of which the deceased collector was entitled thereto, the statement in the opinion being that: "He [the deceased collector] was succeeded in office by J. R. Bond, who, as tax collector, collected fees on delinquent taxes in the sum of $502.50 to which the former tax collector, J. W. Carter, was entitled."

It is to be noted from the court's findings of fact, upon which no attack is made, that the services performed by appellee Barnes, as detailed in his petition and as specified in the trial court's conclusions of fact, and for which he claims the fees later collected by appellant Turner, were performed "during the year 1921 and during the first half of 1923." During that period we find no law authorizing appellee to retain a fee for such services. It is true that under title "Taxation," Vernon's Sayles' Ann. Civ. St. 1914, article 7691, it is provided, among other things: "The collector of taxes, for preparing the delinquent list and separating the property previously sold to the state from

that reported to be sold as delinquent for the preceding year, and certifying the same to the commissioners' court shall be entitled to a fee of one dollar for each correct assessment of the land to be sold, said fee to be taxed as costs against the delinquent."

But under title "Fees of Office," article 3872 of the same statutes, the compensation for the services of the collector of taxes is fixed, and therein no reference is made to or fee fixed for preparing the delinquent list, etc., as specified in article 7691. And in article 3881 of chapter 4 relating to the fees of office, the maximum amount of fees "of all kinds that may be retained by any officer mentioned in this section * * * as compensation for services shall be as follows: * * * Collector of taxes, an amount not exceeding two thousand two hundred and fifty dollars per annum. * * *"

In this connection, however, should be read article 3889 as amended by Act approved March 31, 1919, General Laws of the 36th Legislature, c. 158, p. 300, providing, in effect, that in event there is an excess of fees above the amount allowed, one-fourth of such excess not exceeding $1200 may be added.

Article 3893 of said chapter 4 further provides that: "The commissioners' court is hereby debarred from allowing compensation for ex-officio services to county officials when the compensation and excess fees which they are allowed to retain shall reach the maximum provided for in this chapter. In cases where the compensation and excess fees which the officers are allowed to retain shall not reach the maximum provided for in this chapter, the commissioners' court shall allow compensation for ex-officio services when, in their judgment, such compensation is necessary; provided, such compensation for ex-officio services allowed shall not increase the compensation of the official beyond the maximum amount of compensation and excess fees allowed to be retained by him under this chapter."

Construing the several articles referred to together, we think it appears that the quotation hereinbefore made from article 7691 under title "Taxation," to the effect that the collector of taxes for preparing the delinquent list and separating the property previously sold, etc., shall be entitled to a fee of $1 for each correct assessment made, etc., leads to the conclusion that the fee of $1 here provided for is one to be assembled together with all other fees allowed the collector for the purpose of determining whether or not his fees equal or are in excess of the maximum amount of the total compensation authorized by article 3881 and amended article 3889, above cited. If there be a failure to obtain such maximum amount, we think the commissioners' court would be authorized under article 3893 to make an additional allowance for ex officio services. This conclusion, we think, is favored by the fact that

the said article 7691 was amended by Acts of the 38th Legislature, approved May 26, 1923, and June 21, 1923, effective 90 days after adjournment. See General Laws 1923, 1st, 2d and 3d Called Sessions, p. 37 (2d Called Sess.) c. 13, and 183 (3d Called Sess.) c. 21, which provide, among other things, that the tax collector shall be entitled to a fee of $1 for each correct assessment of land to be sold, etc., "provided that in no case shall the state or county be liable for said fee, which shall be additional and cumulative of all other fees now allowed by law and shall not be accounted for under the fee bill, as fees of office," thus indicating the legislative construction that this fee under the previous enactments was to be considered as in the same category with all other fees. Otherwise, there would seem to have been no occasion for the Legislature to specially provide by the amended article that this fee should be "additional and cumulative" of all other fees and should not be "accounted for under the fee bill, as fees of office." Relating to this subject, the defendant, among other things, testified: "Twenty-four hundred dollars was the maximum salary per year prior to the taking effect of this Act of June 1, 1923, and while the maximum was $2400 a year, all the balance was not to be paid over to county and state because there was an excess fee that came in on that; all the fees that are collected over and above the $2400 maximum, the collector gets one-fourth of it, that is, of the excess fees. His salary is $2400 a year and the one-fourth of the excess fees collected in addition to that. I do not remember that on June 1, 1923, the Governor approved the law allowing the assessor to retain the fees for making the delinquent tax rolls. I do not remember when that law took effect. Prior to that time I had to pay those fees in to the county treasurer, the one-fourth."

Considering what we have said as a whole, it seems clear to us that at the time of the performance of the services for which appellee now claims fees, there was no law that gave him the right to retain such fees in addition to the maximum amount provided for by laws then in force.

■ Section 44 of article 3 of the Constitution provides that the "Legislature shall * * * not grant extra compensation to any officer, * * * after such public service shall have been performed. * * *"

Section 53 of the same article also provides that: "The legislature shall have no power to grant, or to authorize any county or municipal authority to grant, any extra compensation, fee or allowance to a public officer, * * * after service has been rendered. * * *"

Moreover, we cannot impute to the Legislature the purpose by the enactment of the amendments approved May 26 and June 21, 1923, to add the fees under consideration as extra compensation, for to do so would

be not only to violate the clauses of the Constitution above cited, but also violative of section 16, article 1, of the Constitution, which provides that: "No bill of attainder, ex post facto law, retroactive law, or any [other] law impairing the obligation of contracts, shall be made."

The court below, it seems, gave effect to the judgment entered in favor of Denton county against appellee Barnes on the 10th day of March, 1926, for the sum of $6,600 in full satisfaction of all matters in controversy, but we fail to see how this judgment aids appellee. The question in this case is not whether Denton county or appellant Turner is entitled to the tax fees collected by Turner, but the question is whether the appellee Barnes is entitled to such fees. It is essential to his recovery that he so show, and the judgment, if anything, as it seems to us, is to be construed as unfavorable to him, for that judgment evidences the fact that he had not paid over all the fees to which the county was entitled, and in his opposition to the suit it must be assumed that he presented as an offsett to the county's claims all fees to which he was entitled under the law.

We conclude that the judgment below should be reversed and here rendered in appellant's favor. Nothing said in this opinion is to be construed as barring Denton county from receiving the amount of its fees, if it should seek to recover the same, and show itself entitled thereto.