## CAMERON COUNTY v. FOX et al.
### No. 8635.

Court of Civil Appeals of Texas. San Antonio. July 25, 1931.

Rehearing Denied Oct. 7, 1931.

Second Motion for Rehearing Denied Nov. 4, 1931.

Faulk & Abney, of Brownsville, for plaintiff.

Seabury, George & Taylor and West & Hightower, all of Brownsville, for defendants.

**SMITH, J.**

This action was brought by Cameron county against James J. Fox, tax collector of said county, and the surety on his official bond, to recover of him certain fees of office which he admittedly collected and is alleged to have unlawfully retained. Fox and his surety re-convened and sought to recover certain amounts Fox had paid over to the county, but which he claimed he was entitled to retain under the law.

In a trial without a jury the court found against the county as to its suit against Fox, and that the latter's claims against the county were sustained by the evidence, but were barred by limitation. Judgment was accordingly rendered that neither party recover, except as to costs, which were taxed against the county. All parties have appealed. The county will be designated as appellant, Fox as appellee, and his codefendant as the "surety."

The principal issues to be determined are summarized in appellant's brief as follows:

"First: To determine what fees collected were exempt from the fee bill and the amount thereof.

"Second: To determine whether or not the defendant under the facts and the pleadings was entitled to any credit for the salaries of his deputies and assistants paid during the years 1920 to 1926.

"Third: To determine whether or not the Defendant was entitled to a credit of $5,585.-00 for 'overtime compensation' paid to his deputies, over and above the regular rate of salary authorized by law.

"Fourth: To determine whether or not the Defendant under the facts and pleadings was entitled to any credit for any expenses of office.

"Fifth: To determine whether or not certain specific items charged as 'Expenses' were lawful charges.

"Sixth: To determine when Cameron County came under the Fee Bill."

I. Prior to 1897 county officials, including tax collectors, received and appropriated to their own use. all fees derived from the performance of their official duties. In that year, for the first time, the Legislature passed what is known as the Maximum Fee Bill," fixing the maximum salaries of such officers in the larger counties of the state, and requiring them to pay in to the county treasury all fees in excess of those amounts, after deducting certain commissions. Chapter 4, tit. 58, R. S. 1911, art. 3881 et seq. It has been definitely determined that counties having populations in excess of 15,000 inhabitants to be determined by the federal census of 1900 and thereafter were subjected to the provisions of the Maximum Fee Bill, beginning with the year 1902. Ellis County v. Thompson, 95 Tex. 22, 64 S. W. 927, 66 S. W. 48; Moorman v. Terrell, 109 Tex. 173, 202 S. W. 727; Sparks v. Kaufman County (Tex. Civ. App.) 194 S. W. 605.

The federal census accorded Cameron County a population of 16,095 in 1900, where-

by said county was brought under the operation of the Maximum Fee Bill in 1902.

▮ The succeeding federal census, of 1910, accorded Cameron county a population of 27,158, which did not have the effect of changing the classification of its officials under the provisions of the act in question. In 1913, however, the Legislature increased the minimum of population of counties to be exempt from the operation of the Fee Bill from 15,000 to 25,000, to be determined by the "last" (1910) federal census. Chapter 121, Gen. Laws 1913, Reg. Sess., p. 246 repealed by Acts 36th Leg. (1919), c. 158, re-enacted by Acts 38th Leg. (1923), c. 181 (now article 3900, R. S. 1925). In the meantime, however, in 1911 (Acts 32nd Leg., c. 48) the Legislature created Willacy county out of the territory until then embraced within the county of Cameron, so that approximately one-half of that territory was cut off into the county of Willacy. A witness, who was perhaps as well qualified to so testify as any individual could be in such a matter, testified that in his opinion "about" 2,500 of the inhabitants of Cameron county resided in the territory thus cut off into the new county, and from this testimony the trial judge found as a fact that it was "doubtful whether or not Cameron County as it thus existed after the creation of Willacy County had a population of 25000 people." Upon this finding the trial court concluded as a matter of law that under the act of 1913, exempting counties of less than 25,000 population from the operation of the Maximum Fee Bill, Cameron county was brought within that exemption, and that its officials were not required to account for the fees collected by them. We are of the opinion that the court erred in this conclusion.

The census of 1910 accorded the county a population of 27,158, thus clearly continuing it under the operation of the Fee Bill, as originally enacted and in force when the census of 1910 was taken and published. That population was 2,158 in excess of 25,000 fixed in the act of 1913. We do not think the expressed opinion of a witness that "about" 2,500 inhabitants of the county were cut off into the new county more than a year after the census was taken, should be given the effect of defeating the legislative intent of fixing the population of 25,000, to be ascertained by the census. Even if this mere opinion of a well-qualified witness was accurate, and should be given full effect, his testimony shows that a year after the census showed the population of the county to be 27,158, the creation of Willacy county out of the territory embracing Cameron county reduced the population by only 2,500. During the preceding decade the population of the county increased at the rate of 1,106 each year, and in the succeeding decade at the rate of 906 each year. At either rate the population of the county had increased sufficiently to sustain its position well above the minimum of 25,000, when Willacy county was created late in 1911, even though 2,500 of its inhabitants were excluded in 1911. No doubt the trial court properly inquired into the question of actual population, but the evidence adduced thereunder, as well as the court's finding thereon, were not sufficient to take the county out of the 25,000 class. We hold that appellant and his predecessors were amenable to the provisions of sections 10, 11, and 16 of the act in question, until that act was repealed in toto in 1919 (Acts 36th Leg. c. 158). It was re-enacted in 1923 (Acts 38th Leg. c. 181). We therefore sustain appellant's first proposition, and hold that Cameron county came under the operation of the Fee Bill in 1902, and has continuously remained thereunder.

II. In 1897 the Legislature passed an act (article 7691, Rev. St. 1911) in which it was provided that: "The collector of taxes, for preparing the delinquent list and separating the property previously sold to the state from that reported to be sold as delinquent for the preceding year, and certifying the same to the commissioners' court shall be entitled to a fee of one dollar for each correct assessment of the land to be sold, said fee to be taxed as costs against the delinquent. * * * Provided, that in no case shall the state or county be liable for such fees, but in each case they shall be taxed as costs against the land to be sold under judgment for taxes and paid out of the proceeds of sale of same after the taxes, penalty and interest due thereon to the state are paid."

It appears from the record that appellee Fox, after he went into office in 1918, collected certain taxes delinquent for the year 1918 and prior years, and retained the $1 fee accruing to the tax collector under the terms of said provision. These fees so retained by him amounted to $8,718. The trial court held that the "officer who performed the services and/or the bulk of the services provided" for in said act "to earn the $1 delinquent cost items, is entitled to said fees," and that appellee Fox, "having acquired (by assignment) all the rights of his predecessor" in office during said period, was entitled to all of said fees, "as Cameron County has no claim or right to them." This holding was based upon the incorrect assumption that Cameron county was exempt from the operation of the Maximum Fee Bill until the year 1919.

▮ It has been definitely decided that in counties operating under the Maximum Fee Bill, such as Cameron, the tax collector's fee of $1 provided for in the above-quoted article 7691, R. S. 1911, was required to be accounted for, and therefore could not be retained by the collector. Bitter v. Bexar County (Tex. Com. App.) 11 S.W.(2d) 163; Turner v. Barnes

(Tex. Civ. App.) 19 S.W.(2d) 325; Id. (Tex. Com. App.) 27 S.W.(2d) 532.

■ This provision remained in force until the year 1923, when it was amended and became article 7331, R. S. 1925, under which the collector is not required to account for, but may retain, said fees, in addition to all other compensation accorded him by law.

It is provided in articles 3897 and 3894, R. S. 1925 (which were in force when these matters arose) as follows:

"Art. 3897. *Sworn Statement.*—Each officer mentioned in Article 3883 [Maximum Fee Bill] shall, at the close of each fiscal year, make to the district court of the county in which he resides a sworn statement showing the amount of fees collected by him during the fiscal year, and the amount of fees charged and not collected, and by whom due. * * *"

Art. 3894. *Delinquent Fees.*—All fees due and not collected as shown in the report required by Article 3897 shall be collected·by the officer to whose office the fees accrued; and, out of such part of delinquent fees as may be due the county, the officer making such collection shall be entitled to ten per cent of the amount collected by him. * * *"

It is contended by appellant, and we so held in the original opinion herein, that the fee of $1 now under consideration became a "delinquent" fee of office, as defined in article 3894, when not actually collected during the year in which the "correct assessment" represented by it was certified by the collector, and that when finally collected such "delinquent" fee should have been paid into the county treasury by the collector, less 10 per cent. commission, as provided in article 3894. We now conclude that the statute under consideration does not warrant such classification of that fee. Undoubtedly such construction would be correct if the certification of each correct assessment by the tax collector constituted a complete service, with nothing remaining to be done to render the fee a separate and directly and immediately enforceable charge upon the property listed as delinquent. But that is not the case here. Such fee has a distinct and peculiar status. It is determinable only by a judgment to be rendered in the future in a suit to be instituted in behalf of the state and county to collect the delinquent taxes. It accrues—matures—only at the end of that suit, and is "due" and collectible only in the contingency that a sale of the property after judgment brings the amount of the fee in excess of the taxes, penalties, and interest adjudged against the property. We do not believe that the Legislature intended that a fee dependent upon so many contingencies shall be regarded as delinquent within the purview of article 3894 when not collected during the year in which the collector made up the certificate constituting the basis for the charge. It has not been so classified in any of the reported cases construing the acts involved. It does not belong to that class of costs incident to other than delinquent tax suits, in which the costs incurred fully accrue and are fixed and determinable by the performance of the service, and the collection of which may be enforced at once without reference to the termination or result of the suit in which it arises. We think it should be classified as a current fee of office, as of the time of its actual collection, since it is in no event due or collectible until it is collected. Being so classified, if the service by which it was earned was performed prior to the effective date of the act of 1923, it was a fee of office to be accounted for by the collector; if for services performed after that date, it is not to be accounted for by the collector. Barnes v. Turner (Tex. Com. App.) supra.

■■ III. In an act approved April 3, 1915 (Acts 34th Leg. c. 147), known as "House Bill 40," the Legislature made provision for more efficient and prompt collection of delinquent taxes. In this act the duties of the tax collector were set out in detail. For these services it was provided the tax collector should receive "5 cents for each and every line of yearly delinquencies entered" on the delinquent and supplemental delinquent records therein provided for, "to be paid out of the general fund of the county upon the completion of said record or supplement," and as compensation for the additional services therein exacted of him it was provided that "the tax collector shall also receive a commission of 5 per cent. on the amount of all delinquent taxes collected in addition to the commissions now allowed him by law." Article 7688a, Vernon's Ann. Civ. St. Supp. 1918. By reason of this language of the act this item of 5 per cent. commission was not to be accounted for by the collector under the provisions of the Maximum Fee Bill, but was to be retained in full by him. Curtin v. Harris County, 111 Tex. 568, 242 S. W. 444.

The Thirty-Sixth Legislature undertook to require the tax collector to account for this fee under the Maximum Fee Bill. Acts 36th Leg., 2 Called Sess. 1919, c. 64, § 2. But the attempt was abortive and ineffectual. Bitter v. Bexar County (Tex. Com. App.) 11 S.W.(2d) 163. The provision therefore remained in effect until 1923, when the Thirty-Eighth Legislature passed an act providing that said fee should be accounted for under the Maximum Fee Bill. Acts 1923, 3 Called Sess., c. 21, p. 182, § 2 (article 7331, Rev. St. 1925).

It is conceded by appellant that the fee of 5 per cent. commission on delinquent taxes accruing under the act of 1915, and collected prior to the effective date of the act of 1923 (article 7331), was not required to be accounted for but could be retained by the collector. But it is contended by appellant that all fees for services only partly performed under the

act of 1915, and which had not fully accrued and were not collected until after the act of 1923, became effective, should have been accounted for under the terms of the latter act. On the other hand, appellee contends, and the trial court gave effect to that contention, that that fee was for services the "bulk" of which were rendered prior to the effective date of the act of 1923, and that therefore they accrued and became payable under the act of 1915, although the delinquent taxes out of which the fee was to be realized, and therefore the fee itself, were not actually collected until after the act of 1915 was superseded by the act of 1923, under which the fees for like services were required to be accounted for by the collector. It is true that a part of those services were rendered prior to the 1923 enactment, but those remaining were performed by the servant, and the fees were actually collected, after that time.

The services exacted of the collector under the act of 1915 with reference to the collection of delinquent taxes were divided into two classes, as were the collector's fees for those services. In the first class the collector was required to prepare original and supplemental delinquent tax rolls, for which service he was allowed a specific fee of 5 cents a line for each line of said rolls, to be paid by the county out of its general fund. In the second class the services required of the collector consisted of the preparation and furnishing of notices and duplicate notices, and of statements, from information disclosed in the rolls previously prepared by the collector. These additional services were required to be repeated from year to year until the taxes were collected, and the final act thereof was the issuance of redemption certificates to the taxpayer. The compensation allowed the tax collector for all these additional services was a commission of 5 per cent. of the delinquent taxes collected, to be deducted from the taxes when paid.

It is obvious that the 5 per cent. commission allowed the collector was intended to compensate him for these additional and continuing services, rather than for making up the rolls, for which specific service he had been previously compensated.

The fee of 5 cents a line was a matter between the collector actually doing that work and the county. When the collector performed the service, his right to the fee instantly accrued and became a vested right, which he could enforce against the county, and with which succeeding collectors could not be concerned.

But the fee of 5 per cent. commission, upon delinquent taxes to be collected, takes a very different status, for it is in payment of a series of acts, running sometimes over a period of several years, and since the act makes no provision for, and obviously does not con-template, the segregation and separate appraisal of the value of those several acts, the fee therefor may not be regarded as earned until the whole service is performed, and until it is earned it cannot accrue. The logical conclusion therefore must be that the fee does not accrue until the taxes are paid by the taxpayer, and the redemption certificate is issued by the collector in office at the time, who may retain, or shall account for, the fee, as the applicable law then in force provides. It seems obvious that any other construction of the act of 1915 would be wholly incompatible with the orderly administration of the law. This construction does not appear to conflict with any authority coming to our notice, but is supported by the decision of the Commission of Appeals in Freeman v. Terrell, 115 Tex. 530, 284 S. W. 946. Accordingly, we sustain appellant's fourth proposition, in which this question is presented.

IV. Appellant contends that appellee did not comply with the law as a condition to the proper appointment of his deputies, and was not entitled to credit for the payment of their salaries. We overrule the contention, expressed in appellant's fifth proposition. The evidence and the trial court's findings of facts show, in our opinion, a compliance with the spirit of the law upon the subject, and the record does not warrant the harsh remedy sought to be enforced against appellee in this matter. Steusoff v. Liberty County (Tex. Civ. App.) 34 S.W.(2d) 643 (writ of error refused).

V. A more serious question is raised in appellant's sixth proposition, however. It appears from the record that during the seven years in controversy appellee not only paid his deputies the maximum salaries lawfully fixed and due them, but also paid them, as "overtime" and in addition to their salaries, the sum of $5,585. This sum was charged as expenses of the office of appellee as tax collector, and retained by him out of the fees of office collected by him. The county sought in the suit to recover this sum of appellee, which was denied by the trial court. Upon this issue the trial court found as a fact that: "The $5585.00 paid to his deputies as hereinbefore found, for overtime, was judiciously and beneficially spent by the Defendant Fox in behalf of and for Cameron County, after the question of paying the deputies who drew overtime pay, as shown in the audit produced in evidence before me, had been investigated and thoroughly considered by the then County Auditor and County Commissioners' Court of Cameron County, the then Criminal District Judge and the then various grand juries, who reviewed the matter, and the conclusion reached by all of said bodies and persons was that it was to the best interest of Cameron County to pay said deputies for overtime services, and I find that as a result of said employment, Cameron Coun-

ty got value received, and that the Defendant Fox and the Commissioners' Court acted in the premises for the best interest of Cameron County."

Upon this finding the court concluded as a matter of law that appellee "had the legal right to pay his deputies and assistants said sum * * * for overtime work done and performed by them."

The statute fixes the "maximum compensation," which may be paid to deputies and assistants in tax collectors' offices, and expressly provides that "said compensation shall not exceed the maximum amounts" so fixed. Article 3902. We conclude that such limitation is mandatory and may not be disregarded in any event by county officials. Any other rule would have the effect of absolutely setting aside a plain and unequivocal statutory command, for, if a county official, under given circumstances, may apply public funds to the payment of any amount of excess compensation to his deputies and assistants, he may apply such funds in larger amounts according to varying circumstances, and in that way usurp the legislative authority and thwart the legislative will, as his own judgment and conscience dictates. We hold that appellee, acting alone or with the knowledge and approval of the commissioners' court or other authority, had no power to divert public funds to the payment of compensation to his deputies and assistants in excess of the maximum compensation prescribed by the Legislature. Steusoff v. Liberty County, supra.

It is apparently true that these excess payments were for services fully earned by appellee's appointees, and that as a practical matter the cost thereof to the county was less, and the work more efficiently done, than if additional help had been employed to perform the additional services rendered by the regular staff outside the course and time of their regular duties. But this fact cannot serve to clothe county officials with a power so expressly denied them by the statute. We sustain appellant's sixth proposition.

■■■■ VI. It appears from the record that appellee in the course of the years 1923 to 1926, both inclusive, incurred certain expenses in the conduct of his office, and paid them out of the fees of his office, which appellant insists were not authorized by law, and for which recovery was sought by appellant against appellee. These expenses included charges for meals furnished employees of the office, "advertising," the nature of which is not disclosed by the evidence, typewriters, premiums paid upon the official bonds of deputy and assistants, numbering machine, oil stove and oil for fuel therein, fountain pens. These expenses amounted to several hundred dollars, and were allowed to appellee as having been lawfully incurred by him in the conduct of his office. Appellant strenuously urges that the expenditures were without any authority of law, and that appellee should be required to reimburse the county for the amount of its funds paid out therefor by appellee. During the period involved the statutory provision applicable here, embraced in article 3899, R. S. 1925, is that: "At the close of each month of his tenure of such office every officer whose fees are affected by the provisions of this law shall make as a part of the report now required by law, an itemized and sworn statement of all the actual and necessary expenses incurred by him in the conduct of his office, such as stationery, stamps, telephone, traveling expenses and other necessary expense."

The trial court found as a fact that the amounts expended by appellee for this purpose were "reasonably necessary and legitimate expenses of office," and concluded therefrom "as a matter of law that the Defendant Fox substantially complied with the law concerning the making of his monthly and annual reports to entitle him to credit for expenses of office but if I am incorrect in this conclusion, I further conclude that the pertinent statutes are merely directory and not mandatory."

The expenses which a county official is authorized to incur, with the approval of the commissioners' court, are limited to "such as stationery, stamps, telephone, traveling expenses and other necessary expenses," and it has been held, with the approval of the Supreme Court, that the clause, "other necessary expenses," as used in said provision, must be restricted to mean other expenses similar to those expressly specified in that provision. Casey v. State (Tex. Civ. App., writ of error denied) 289 S. W. 428. Under this construction—under any rational construction of the statute—it seems obvious that appellee had no authority, and the commissioners' court could give him none, to incur expenses, and appropriate public funds, for the premiums upon the official bonds of himself or his subordinates, or for their meals, or for unexplained items of "advertising" and "tax notices," and we conclude that the trial court erred in denying to appellant recovery for the amounts appropriated by appellee out of the public funds for these items of expense. With reference to the other items of expense mentioned, we are not disposed to disturb the trial court's judgment thereon. Those items were such as the commissioners' court could have contracted for and purchased, either directly or through its agents, and since it is apparent that appellee incurred and paid these items with the knowledge and acquiescence of that body, we conclude that appellee cannot now be required to reimburse the county for those expenditures. Appellant cites the cases of Casey v. State, supra, Sparks v. Kaufman

County, supra, and Disinfecting Co. v. Freestone County (Tex. Civ. App.) 193 S. W. 440. While holding against the exercise of such authority by county officials, those cases stress the fact that the officials acted without authority of the commissioners' court, and intimate that the latter's ratification of the acts complained of would have constituted a defense to the county's action to recover of the official who incurred the expense.

VII. We come now to a consideration of appellee's cross-assignments of error, of which there are three. It is contended in appellee's first cross-assignment that the trial court erred in not holding that appellant's cause of action against appellee for the year 1920 was barred by the two and four year statute of limitation.

In the original opinion this assignment was sustained, but on reconsideration we conclude that we erred in so ruling. In the first place, the question was one of fact, which the trial judge resolved against appellee, and we cannot say from the record presented that he abused his discretion in his finding upon this issue, which included the question of the voluntary appearances of the parties defendant in December, 1924, without requiring the issuance and service of process.

It appears, besides, that this controversy is within the purview of the chapter 95, Acts 1st Called Sess. 41st Leg. (1929) p. 234, in which it is provided that neither the county nor the tax collector may plead limitation in actions to recover fees of office unlawfully retained by either against the other. We conclude that appellee's first cross-assignment of error should be overruled.

VIII. We sustain appellee's second cross-assignment of error. It was agreed by the parties that appellee performed all the work required of him under the provisions of the Act of 1915 (Acts 34th Leg. c. 147), known as House Bill No. 40, in compiling the delinquent tax records for the years 1885 to 1922, inclusive, for which, under the terms of said act, he was entitled to a specific fee of 5 cents a line for each line thereof. It was agreed that these services, in so far as they affect the question here involved, were performed by appellee prior to August 14, 1923. Prior to that date appellee was allowed to retain, and was not required to account for, said fees, which were to be paid to appellee out of the general fund of the county. They were in fact so paid by the county by warrant issued on January 14, 1924, but the county obtained judgment in this suit to recover them back from appellee. Appellee's statement under this assignment is very meager, and does not clearly disclose the theory upon which judgment was rendered in favor of the county for this item. It is inferable, however, that the judgment proceeded upon the assumption that because these fees were not approved and paid until after August 14, 1923, appellee was required to account therefor to the county, under the provision of the act of 1923, effective on said date. As we have already indicated, the liability of the county to appellee for this item accrued and became absolute upon the performance of the service by appellee, and could not be affected by a subsequent Act of the Legislature. The fact that the item was not audited, or approved or paid by the county until after a later act became effective, could not affect the existing fixed liability of the county therefor.

IX. Appellee's third cross-assignment of error raises a more difficult question. It appears from appellee's statement under said assignment, that during the years 1920 to 1926, inclusive, appellee, under a mistaken view of the law, accounted for and paid into the county treasury amounts aggregating $9,882.99 covering fees he was not required under the existing laws to account for and pay over. The trial court refused to allow appellee credit for this sum in offset of funds found to have been unlawfully withheld by him. The court so decreed upon the theory that appellee did not file his cross-action for such credit until it was barred by limitation. It further appears, however, that appellee's surety, impleaded along with him as a codefendant, timely filed its answer and cross-action, in which it set up the foregoing facts and sought to obtain such credit, in behalf of appellee, its principal, as well as of itself. It is urged by appellee that this pleading of its codefendant, expressly asserting appellee's rights to the credit, sufficed to avoid the bar of limitation against appellee, although the latter did not file his own answer and cross-action (in which he adopted his surety's answer) until the period of limitation had elapsed. We are of the opinion that this contention should be sustained. The credit inured to the benefit of both principal and surety alike, and either could effectively plead it in behalf of both, and on appeal may urge the error of its denial in the trial court. Texas & P. R. Co. v. Levine (Tex. Civ. App.) 29 S. W. 514; Id., 87 Tex. 437, 29 S. W. 466; Garrett v. Dodson (Tex. Civ. App.) 199 S. W. 675.

We conclude, further, that appellant was cut off from its plea of limitation by the act of the Forty-First Legislature, hereinabove referred to, and sustain the cross-assignment upon that ground, also.

Obviously, the conclusions we have expressed require reversal of the judgment appealed from. Appellant urges that judgment should be here rendered in event of reversal, but such task is one for a special master, rather than an appellate court.

We are constrained to add, in justice to appellee Fox, that in the matter of determining if and when Cameron county came under the

operation of the Maximum Fee Bill, appellee was fortified in his position by the construction placed upon the law by the various county and state officials to whom he was required by law to report and account. The construction placed by other county officials and the appropriate state officials upon section 17 of the Fee Bill was given some weight by the authorities upon which we have sustained appellant's first proposition, concerning the method by which the population of counties affected by section 17 was determinable. But that construction was given only persuasive, and not controlling, weight by those authorities in deciding the question, and obviously cannot be given controlling weight in passing upon that question here. We are constrained to go further and say that but for the clear and positive holding, in the cited cases, that the method prescribed in section 10 for determining the population of counties affected by section 17 should control over the different method specifically and plainly prescribed for that purpose in the latter section, we would be disposed to hold in favor of appellee upon that question, in view of the plain provisions of section 17, and of the construction placed thereon by all county and state officers having to do with the administration of the law thereunder.

For the several reasons given herein, the judgment of the court below will be reversed, and the cause remanded for further proceedings in consonance with this opinion, which will be substituted for the original opinion, hereby withdrawn.

On Appellant's Second Motion for Rehearing.

Appellant urges in a second motion for rehearing that this court erred in the conclusions set out in paragraph II of its opinion, concerning the fee of $1 collected by appellee under the provisions of article 7331, Rev. St. 1925 (Acts 1923, 3d Called Sess., c. 21), for each correct assessment of land to be sold for delinquent taxes. Appellant construes the opinion as holding that all fees in that class collected after the effective date of the act of 1923, upon assessments certified prior to that date, are not to be accounted for by the tax collector, but may be retained by him. We do not think the opinion is subject to that construction; certainly we did not intend to so hold. We held, simply, as stated in the opinion, that "if the service by which it [that fee] was earned was performed prior to the effective date of the act of 1923, it was a fee of office to be accounted for by the collector; if for services performed after that date, it is not to be accounted for by the collector. Barnes v. Turner (Tex. Com. App.) supra." That conclusion was based, first, upon the plain language of article 7331, and, second, upon the language of the Commission of Appeals, in the cited case, in disposing of the very question here under consideration. In that case it was said, with reference to the claim of the collector (Barnes), that: "It is plain that the services performed by Barnes were performed, and intended to be performed, in compliance with old article 7691 of the 1911 codification. If he is entitled to any fees at all, it is under that article, and there is absolutely nothing in the 1923 act which can be construed as applicable to matters transpiring prior to its taking effect; in other words, the 1923 act cannot be construed as having a retroactive effect. Its very terms demonstrate that the Legislature intended it to apply only after it became effective, and it contains no words that would even lead to an inference that it was intended to apply to services performed before its passage." In accordance with that statement of the rule we hold, as in the principal opinion, that appellee was required to account for all fees in this class for services performed prior to the effective date of the act of 1923, no matter when collected, but is entitled to retain all fees collected for such services performed after that date.

With this explanation of the holding discussed, appellant's motion will be overruled.