**CAMERON COUNTY v. FOX et al.**

No. 1669—6147.

Commission of Appeals of Texas, Section A.

May 31, 1933.

H. L. Faulk, James L. Abney, and M. R. Hall, all of Brownsville, for plaintiff in error.

Seabury, George & Taylor, R. A. Hightower, and West & Hightower, all of Brownsville, for defendants in error.

HARVEY, Presiding Judge.

This suit was brought by Cameron county against James J. Fox, tax collector of said county, and the surety on his official bond, to recover sundry fees of office collected by him, and alleged to have been unlawfully retained by him. Fox became tax collector in the year 1918, and continued in office until after the year 1926. The present suit partakes somewhat of the nature of one for a general accounting for the period from the year 1920 to 1926, both years inclusive. The trial court rendered judgment which, in effect, denied the county a recovery of any amount, and such judgment has

been reversed by the Court of Civil Appeals, and the cause remanded. 42 S.W.(2d) 653, 658. Fox and his surety applied to the Supreme Court for writ of error, which was granted. The county also was granted writ of error on its application therefor.

A detailed statement of the case is not necessary. The nature of the various questions presented here will appear from our discussion of the assignments presented in the respective applications. We shall first take up the assignments presented by Fox and his surety. The first four of these assignments relate to the ruling of the Court of Civil Appeals to the effect that Cameron county was under the operation of the Maximum Fee Law from the year 1902 to 1920. That the county was under the operation of that law subsequent to that time is in no wise questioned, but is tacitly conceded.

At no time prior to the year 1916 did the vote cast in any presidential election held in said county reach the number of 3,000. In the year 1916, the number of votes cast for president exceeded 3,000, but was less than 5,000. According to the federal census for the year 1900, the county had a population of 16,095; and according to the 1910 federal census the county had a population of 27,158. In the year 1911, the Legislature created the new county of Willacy, and included therein approximately one-half of the territory theretofore embraced in Cameron county. A large but indefinite number of people resided in the territory which was detached from Cameron county and placed in Willacy county. From estimates made by witnesses who were acquainted with the situation, and who testified at the trial, the trial court found that at least 2,500 people resided in said territory at the time same was detached from Cameron county.

■ In the year 1897, what is known as the Maximum Fee Law was passed. See chapters 5 and 15, pages 5 and 42, General Laws, 25th Leg., First Special Session. Since that time the law has been amended in various respects, but, as regards the mode of determining the population of a county, for the purposes of said law, there has been no material change. It is settled by the decisions that the standard prescribed, by which to determine the population of a county for the year 1902 and succeeding years, is the last preceding federal census, and not the vote cast in a presidential election. Mooreman v. Terrell, 109 Tex. 173, 202 S. W. 727; Ellis County v. Thompson, 95 Tex. 22, 64 S. W. 927, 66 S. W. 48; Sparks v. Kaufman County (Tex. Civ. App.) 194 S. W. 605. Prior to the year 1913, the Maximum Fee Law, according to its terms, was applicable to counties of 15,000 population or more. In the last-named year, an amendment was passed which had effect to raise this minimum figure to 25,000. Gen. Laws,

33d Leg. (1913), Reg. Sess., chapter 121, p. 248 (article 3898); Stephens County v. Hefner, 118 Tex. 397, 16 S.W.(2d) 804.

■ As seen, the population of Cameron county, according to the federal census of 1900, was 16,095; and, according to the federal census of 1910, the population of the county was 27,158. It thus appears that from the year 1902 to 1911, when Willacy county was created, Cameron county was under the operation of the Maximum Fee Law. But, when Willacy county was created, the territorial area of Cameron county was substantially reduced. The federal census of 1910 was no longer applicable to Cameron county, for the simple reason that the census of that year had relation to a substantially different territory. The fact that the newly defined territory was called Cameron county does not alter the case. Since, therefore, there was no preceding federal census which was applicable to the territory comprising Cameron county, after Willacy county was created, it follows that Cameron county, as it existed after the latter event occurred, was not under the operation of the Maximum Fee Law until the federal census of 1920 became effective.

■ The complaint of Fox and his surety, as presented by their fifth assignment, has reference to the commission of 5 per cent. on delinquent taxes which was originally provided for the tax collector in section 3 of an act passed in the year 1915. General Laws 34th Legislature (1915) Regular Session, chapter 147. That act provided various and sundry duties of the tax collector in respect of delinquent taxes. Among those duties were the preparation of a statement or notice, each year, of the taxes which become delinquent on any given parcel of land, and the mailing of such statement or notice to the record owner of the property. The tax collector was also required to furnish a duplicate of each of said statements or notices to the county attorney or district attorney, and to perform other duties relative to said statements or notices, as prescribed in said act. For the performance of these duties each successive year, the act made no provision for specific compensation other than as provided in section 3 in the following words: "The tax collector shall also receive a commission of 5 per cent on the amount of all delinquent taxes collected in addition to the commissions now allowed him by law." At first the said commission was not required to be accounted for under the Maximum Fee Law. Curtin v. Harris County, 111 Tex. 568, 242 S. W. 444. But in the year 1923 an act was passed bringing same under operation of that law. Acts 1923, 3d Called Session, chapter 21, p. 182, § 2 (later appearing as article 7331 of Revised Statutes of 1925). The question raised by the assignment now under con-

sideration is whether or not the above commission of 5 per cent., as regards delinquent taxes for previous years which remained uncollected when the last-mentioned act became effective, became, when said taxes were subsequently collected, subject to the Maximum Fee Law. We think it did. It matters not that prior to the passage of said act the tax collector performed the duties for which said commission is prescribed as compensation, or how often he or any of his predecessors in office performed those duties throughout a series of previous years, the commission did not become due until the delinquent taxes involved were collected. The commission did not accrue until that time. We adopt the following language of the Court of Civil Appeals, in this case, in reference to this matter: "But the fee of 5 per cent. commission, upon delinquent taxes to be collected, takes a very different status, for it is in payment of a series of acts, running sometimes over a period of several years, and since the act makes no provision for, and obviously does not contemplate, the segregation and separate appraisal of the value of those several acts, the fee therefor may not be regarded as earned until the whole service is performed, and until it is earned it cannot accrue. The logical conclusion therefore must be that the fee does not accrue until the taxes are paid by the taxpayer, and the redemption certificate is issued by the collector in office at the time, who may retain, or shall account for, the fee, as the applicable law then in force provides. It seems obvious that any other construction of the act of 1915 would be wholly incompatible with the orderly administration of the law."

■ The remaining assignment contained in the application of Fox and his surety has reference to the item of $5,585 paid by Fox to his deputies for "overtime work," and for which sum Fox claims credit. It appears that the payment for the overtime work was in addition to the maximum salaries of the respective deputies, as provided by statute. These "overtime" payments were charged by Fox as expenses of the office, and retained by him out of the fees of office collected by him. This seems to have been done with the consent and approval of the commissioners' court of the county. In our opinion, the commissioners' court was powerless, after article 3903 of the Revised Statutes of 1911, as amended in the year 1921, became effective, to allow Fox credit for these "overtime" payments. Acts of 1921, Reg. Sess., c. 96. Said article, as amended in that year, as well as succeeding amendments, expressly limited the amount of compensation to be paid to deputies or assistants of the tax collector, from fees of office which would otherwise go to the county. The maximum amounts allowable for compensation to

deputies and assistants were expressly declared. The obvious purpose of the Legislature, in prescribing these maximum amounts, was to exclude from all county agencies, including the commissioners' court, the power to make a greater allowance to the tax collector, in that respect, than the statute prescribed. But prior to the 1921 amendment said article 3903, as amended in the year 1917 (Reg. Sess., c. 55) was in force, and in that amendment of the statute there appeared no such language evincing a legislative purpose to fix the maximum amounts of salaries allowable to deputies and assistants of the tax collector, as appeared in the later amendments of said statute. With reference to deputies or assistants of the tax collector, the 1917 amendment dealt with the mode of obtaining authority for their appointment, but left the amount of their compensation to be fixed by the tax collector. The legislative purpose was to deny the tax collector, among other officers, the authority to retain, as a matter of right, from fees of office collected by him, the amount of compensation paid to his deputies or assistants, unless the provisions regarding the making of application for authority to appoint deputies or assistants, and the procuring of such authority, were complied with. We do not think, however, that the Legislature meant, by the last-mentioned provisions of the statute, to deny the commissioners' court of the county the power to allow the tax collector credit for sums paid his deputies or assistants for services performed by them in carrying on the work of the office. This matter of power in the commissioners' court will be further noticed later on in this opinion, in discussing another phase of the question of deputy salaries. The relevant provisions of the several amendments of the statute, above mentioned, will be set out there.

■ We shall now take up the assignments of error contained in the application of the county for the writ of error. The first assignment involves article 7691 of the Revised Statutes of 1911, which article was originally enacted in the year 1897. It was there provided, in part, that "The collector of taxes, for preparing the delinquent list and separating the property previously sold to the state from that reported to be sold as delinquent for the preceding year, and certifying the same to the commissioners' court shall be entitled to a fee of one dollar for each correct assessment of the land to be sold, said fee to be taxed as costs against the delinquent. * * * Provided, that in no case shall the state or county be liable for such fees, but in each case they shall be taxed as costs against the land to be sold under judgment for taxes and paid out of the proceeds of sale of same after the taxes, penalty and interest due thereon to the state are paid."

Prior to the year 1923, this $1 cost item was accountable as a fee of office under the Maximum Fee Bill, and the Court of Civil Appeals correctly so held. Bitter v. Bexar County (Tex. Com. App.) 11 S.W.(2d) 163: Turner v. Barnes (Tex. Com. App.) 27 S.W.(2d) 532. However, in the year 1923, the law was amended in this respect, by an enactment which became effective August 14, 1923, and which was thereafter incorporated in the Revised Statutes of 1925 as article 7331. By this new article, it was provided, in substance, that, for preparing the annual delinquent list of assessments, separating the property previously sold to the state from that reported as delinquent for preceding years, etc., and certifying same to the commissioners' court) and comptroller, the tax collector shall be entitled to a fee of $1 for each correct assessment of land sold, same to be taxed as costs against the delinquent, and that such fee "shall not be accounted for under the fee bill as fees of office."

The county contends, in effect, that the status of said $1 fee, as a fee of office subject to the Maximum Fee Law, was not affected by the new statute, where such fee remained uncollected at the time the new statute became effective, but the tax collector had performed the duties prescribed in respect of such fee. This means, for example, that if Fox, in the year 1922, say, performed the services prescribed in article 7691 (R. S. 1911) with respect to said $1 fee, but the fee was not collected before the close of the fiscal year, then said fee became a delinquent fee of office, and being such did not belong to Fox. In so far as the contention relates to such a fee as was earned while the county was under the Maximum Fee Law, the contention is sustained. In articles 3897 and 3894 of the Revised Statutes of 1925, the following provisions occur, which provisions were, in all material respects, existing law during the period of time here involved, namely:

"Art. 3897. *Sworn statement.*—Each officer mentioned in Article 3883 [Maximum Fee Bill] shall, at the close of each fiscal year, make to the district court of the county in which he resides a sworn statement showing the amount of fees collected by him during the fiscal year, and the amount of fees charged and not collected, and by whom due."

"Art. 3894. *Delinquent fees.*—All fees due and not collected as shown in the report required by Article 3897 shall be collected by the officer to whose office the fees accrued; and, out of such part of delinquent fees as may be due the county, the officer making such collection shall be entitled to ten per cent of the amount collected by him, and the remainder shall be paid into the county treasury as provided in Article 3891."

No reason is discovered for saying that the above provisions do not comprehend the fee involved in the case illustrated above. The fee was earned when the services prescribed in article 7691 (R. S. 1911) were performed. The fee became due at that time, and was chargeable against the delinquent, although the enforcement of collection depended upon contingencies incident to the enforced collection of the delinquent taxes involved. The new statute of 1923 (article 7331, R. S. 1925) did not purport to modify any provision of the Maximum Fee Law with respect to such fee where same had already accrued, or to surrender any right which had accrued to the county respecting same. In this respect, the new statute did not have retroactive effect. Turner v. Barnes, supra.

As regards this fee of $1, where same was earned while the county was not under the Maximum Fee Law, the situation would be different. In that case, the right of the tax collector to the fee, irrespective of the Maximum Fee Law, would have become fixed at the time the fee was earned. Regardless of when the fee was collected, it would belong to the tax collector who earned it.

Another question raised by the county, in its application for writ of error, relates to the salaries paid by Fox to his deputies from the year 1920 to 1926, both years inclusive. This question respects salaries paid by Fox in the maximum amounts prescribed by statute, and which sums were retained by Fox from fees of office collected by him. The county contends that Fox is not entitled to credit for the salaries paid, for the reason that the statutory requirements, in reference to the appointment of said deputies and the fixing of the amount of their salaries, were not met. The contention involves article 3903, R. S. of 1911, as successively amended in the years 1917, 1921, and 1925 (Acts of 1917, Gen. Laws, Reg. Sess., c. 55, § 1; Acts of 1921, Gen. Laws, Reg. Sess., c. 96, § 1; Acts of 1925, Gen. Laws, Reg. Sess., c. 52 [Rev. St. 1925, art. 3902]).

As amended in 1917, the said article 3903 contained the following relevant provisions: "Whenever any officer named in Article 3881 to 3886 shall require the services of deputies or assistants in the performance of his duties, he shall apply to the county judge of his county for authority to appoint same; and the county judge shall issue an order authorizing the appointment of such a number of deputies or assistants as in his opinion may be necessary for the efficient performance of the duties of said office. The officer applying for appointment of a deputy or assistant, or deputies or assistants, shall make affidavit that they are necessary for the efficiency of the public service, and the county judge may require, in addition, a

statement showing the need of such deputies or assistants. * * * The county judge in issuing his order granting authority to appoint deputies or assistants shall state in such order the number of deputies or assistants authorized, but the amount of compensation to be allowed each deputy or assistant shall be fixed by the officer requesting same and shall be paid out of the fees of office to which said deputies or assistants may be appointed and shall not be included in estimating the maximum salaries of the officers named in Articles 3881 to 3886, such salaries to be paid out of the fees of the office in the following manner: First, out of any current fees collected, and if such fees are not sufficient, then out of any delinquent fees collected and which are due the county after all legal deductions are made and lastly, if there be any balance remaining after the payment of the maximum salary due the officer and the salaries due the deputies, then such balance to be paid to the county treasury."

As amended in the year 1921, the article read, in part: "Whenever any officer named in Article 3881 to 3886 shall require the services of deputies or assistants in the performance of his duties, he may apply to the county commissioners court of his county to appoint such deputies or assistants and said court may make its order authorizing the appointment of such deputies and fix the compensation to be paid them and determine the number to be appointed, * * * and thereupon the officers applying for such deputies shall be authorized to appoint them as now provided by law, provided that said compensation shall not exceed the maximum amounts hereinafter set out. * * * The maximum compensation which may be allowed for deputies or assistants to the officers named in said Articles 3881 to 3886 for their services, shall be as follows, to-wit: * * * The county commissioners court in each order granting authority to appoint deputies or assistants shall state the number of deputies or assistants authorized and the amount of compensation to be allowed each deputy or assistant, which compensation shall be paid out of the fees of the office to which such deputies or assistants may be appointed and assigned, and shall not be included in estimating the maximum fees of the officers prescribed in said Articles 3881 to 3886; such salaries to be paid out of the fees of the office in the following manner: First, out of any current fees collected, and second, if such fees are not sufficient, then out of any delinquent fees collected which are due the county after all legal deductions are made and if there be any balance remaining after payment of the maximum fee, compensation and excess fees due such officer or officers, and the compensation of such deputy or deputies, such balance shall be paid to the county treasurer. * * * "

As amended in the year 1925, the above statute appears in the Revised Statutes of 1925 as article 3902. The relevant provisions of this new article are substantially the same as those of the 1921 amendment, except that in the new article it is further provided that the application to the commissioners' court for authority to appoint deputies or assistants shall be sworn to, and shall set out the number of deputies or assistants needed, the positions sought to be filled, and the amount to be paid, and shall be accompanied by "a statement showing the probable receipts and disbursements of the office."

It appears that, while the county was for the second time under the Maximum Fee Law, Fox did not, until after the year 1926, make application for authority to appoint deputies, as prescribed by the statute, and that during that period no order, such as the statute prescribed, was made by the county judge, or the commissioners' court, granting such authority. Nor does it appear that the commissioners' court, at any time during said period, entered an order fixing the number of deputies to be appointed or fixing the amount of their salaries, as the statute prescribed. The county insists that, because the current statutory provisions in the various respects stated were not met, Fox is not entitled to the credit claimed by him, and that the sums retained by him, on account of said salaries, are unlawfully retained.

Respecting this matter of salaries, the trial court expressly found that "the question of appointment of his (Fox's) deputies was before the commissioners court, as well as the salaries he was to pay to the various deputies for and during all times while he was holding office during the period involved in this suit, and said court, as well as the county auditors at various periods, as well as the then Criminal District Judge and the various grand juries who investigated the matter, agreed, and correctly so, that each and all of his deputies thus employed at all times, were necessary for the proper discharge of the duties of his office, and reasonable, fair and just salaries at and during all times."

We have concluded that the action of the county auditor, the district judge, and the grand juries, respecting this matter of salaries, is immaterial; but the action of the commissioners' court in respect to such matter is a consideration of controlling importance. Assuming that the commissioners' court, in auditing and settling the accounts of Fox, approved the amount of salaries paid by him to his deputies, such approval, we think, would satisfy the statute. What the commissioners' court could have authorized in the beginning, that court could subsequently ratify. Although we are satisfied

that compliance by the tax collector, with the provisions of the statute regarding the application for authority to appoint deputies was intended by the Legislature to be a condition precedent to the tax collector claiming credit, as a matter of right, for salaries paid his deputies, we are further satisfied that those provisions were not intended to operate as a condition precedent to the exercise of power by the commissioners' court to approve the amount of salaries paid by the tax collector from the fees of office collected by him, and to allow him credit therefor. So far as the action of the commissioners' court in doing this is concerned, the previous lack of authority in the tax collector, in respect to said salaries, would be immaterial. Affirmative action in this respect, by the commissioners' court as such, would bind the county just the same. Nothing said in this connection, however, is meant to imply that the power of the commissioners' court in the respects here discussed was not subject to the limitation heretofore pointed out in connection with the matter of "overtime payments." Nor do we mean to imply that the testimony in the case justifies the fact conclusion of the trial court to the effect that the commissioners' court approved the amount of the salaries paid by Fox to his deputies. Since the case is to stand reversed, the testimony regarding this matter may not be the same at another trial. The sufficiency of the testimony to raise the issue of approval by the commissioners' court, in a way to bind the county, need not, therefore, be determined now.

We recommend that the judgment of the Court of Civil Appeals reversing the judgment of the trial court, and remanding the cause, be affirmed, with instructions to the trial court to observe, at another trial, the rulings made in this opinion.

CURETON, Chief Justice.

Judgment of the Court of Civil Appeals reversing that of the district court and remanding the cause is affirmed, with instructions, as recommended by the Commission of Appeals.

We approve the holdings of the Commission of Appeals on the questions discussed in its opinion.