PIERSON, Justice of the Peace, et al. v.
GALVESTON COUNTY.

No. 8818.

Court of Civil Appeals of Texas. Austin.

June 28, 1939.

James H. Phipps, of Galveston, for appellants.

Charles H. Theobald, Co. Atty., and Emmett F. Magee, Asst. Co. Atty., both of Galveston, for appellee.

McCLENDON, Chief Justice.

Suit by Galveston County to recover from Pierson and his official bondsmen the amount of fees collected during the years 1935 and 1936 by Pierson in his capacity of Justice of Peace in a precinct of said county, alleged to be in excess of the amount he was authorized by law to retain. There was a cross-action by Pierson in which he sought to recover certain fees alleged to be due him by the county. The trial was to a jury, but at the close of the evidence the court withdrew the case from the jury and rendered judgment in favor of the county for the aggregate sum of $702.78 against Pierson and his bondsmen, and denied any recovery on Pierson's cross-action. Pierson and his bondsmen have appealed.

The record and statement of facts are quite voluminous, and the briefs correspondingly so. We have been unable to determine from them just how the amount of the judgment was arrived at. From the issues presented in the briefs, however, it appears that the controversy as it relates to the county's suit concerns the following items: (1) the sum of $15 per month during the two-year period paid by Pierson to his deputy in excess of $60 per month salary fixed by the commissioners' court; and (2) certain lump sum items claimed by Pierson as reimbursement for postage, traveling expenses and messenger service.

As to the additional salary item, the record shows that on January 2, 1935, Pierson made sworn application to the commissioners' court to employ Orra M. Richmond as "deputy" for "office stenographic" service at $60 per month. This application was granted by the commissioners' court on the same day. October 8; 1936, Pierson wrote the commissioners' court as follows:

"On the 12th day of November, 1934, I employed Mrs. Orra M. Richmond at a salary of $75 per month, which salary I have paid her, the earnings of my office being sufficient to do so, this occurring at a time other than at the beginning of the new term. I overlooked seeking the permission of your Honorable body and therefore do at this time, respectfully request that you pass a resolution confirming my action in this matter.

"Assuring you of my appreciation of your kindness, I beg to remain."

October 14, 1936, the commissioners' court passed an order "that action upon this request be deferred until all differences between the Justice of the Peace and the County of Galveston have been settled." February 13, 1937, Pierson wrote another letter to the commissioners' court requesting it "to pass on my application for your approval of the increase in salary granted to my assistant, Mrs. Richmond." February 15, 1937, the court passed an order denying the application for approval of the salary increase. This suit was filed May 6, 1937. June 8, 1937, Pierson filed a suit to have reviewed by the district court the order denying his application to approve the salary increase, on the grounds: (1) that the order was passed without notice to him or an opportunity to be heard; and (2) that the action of the commissioners' court was "arbitrary, unjust and unreasonable and in abuse of official discretion." Subsequently

39

Pierson claimed the order was void for the reason that it was passed at a special term of court the notice calling which was not sufficient to include the subject-matter of the order. On application of the county, the Pierson suit and this suit were consolidated. Pierson plead the pendency of his suit in abatement of this suit. The plea was overruled. This ruling and the consolidation of the two suits are assigned as error. If it be assumed that the order of February 15, 1937, was one reviewable by the district court upon the asserted grounds of invalidity, it seems quite clear that the suit seeking such review and the suit against Pierson and his bondsmen could not be properly joined, and that the latter (at least as regards the excess salary item) should be held in abeyance until the former was determined. Bain v. Coats, Tex.Com. App., 244 S.W. 130. However, in the view we take of the case, the complained of rulings of the trial court, if erroneous, were harmless, since the court's judgment as to the salary item was the only judgment the record would support, for reasons we now discuss.

The appointment of the deputy was under R.C.S., Art. 3902, which provides that: "Whenever any officer * * * shall require the services of deputies or assistants in the performance of his duties, he may apply to the county commissioners' court of his county for authority to appoint such deputies or assistants, setting out by sworn application the number needed, the position sought to be filled, and the amount to be paid. * * * and said court may make its order authorizing the appointment of such deputies and fix the compensation to be paid * * *."

This statute was complied with at the beginning of 1935 and the deputy authorized and her salary fixed at $60 per month. To grant or approve a salary raise to operate retrospectively would, we hold, be a clear violation of our state constitution, Art. 3, § 53 Vernon's Ann. St. Empire Gas & Fuel Co. v. State, 121 Tex. 138, 47 S.W.2d 265; Turner v. Barnes, Tex.Civ.App., 19 S.W.2d 325, affirmed on other grounds, Tex.Com.App., 27 S.W.2d 532. The rule laid down in Cameron County v. Fox, Tex.Com.App., 61 S.W.2d 483, is not applicable here. There the tax collector, without previous authority, employed and paid salaries to deputies, the items being reported in his account, which was audited and approved by the commissioners' court. It was held that it was not essential to obtain approval in advance of employment of deputies; that the commissioners' court had power to ratify what it had the original power to authorize. Here the application had been made and the salary fixed by the commissioners' court in advance of the services performed thereunder. The commissioners' court clearly had no power thereafter to increase the salary for services already performed under authority of its order. The value of the services performed cannot be inquired into. Nor is it material that the justice actually paid the full $75 to the deputy each month as the services were rendered.

The other recovered items in dispute were those in the following quotation from Pierson's 1935 and 1936 annual reports:

| 1935 | 1936 |
|---|---|
| Postage ............. $60. | Postage ............. $55. |
| Traveling Expenses 50. | Traveling Expenses 50. |
| Messenger Service.. 15. | Messenger Service.. 15. |

Pierson made no monthly statements as required in the following portion of R.C. S., Art. 3899: "At the close of each month of his tenure of such office each officer whose fees are affected by the provisions of this law shall make as a part of the report now required by law, an itemized and sworn statement of all the actual and necessary expenses incurred by him in the conduct of his office, such as stationery, stamps, telephone, traveling expenses and other necessary expense. If such expense be incurred in connection with any particular case, such statement shall name such case. Such expense account shall be subject to the audit of the county auditor, if any, and if it appear that any item of such expense was not incurred by such officer, or that such item was not necessary thereto, such item may be by such auditor or court rejected. In which case the correctness of such item may be adjudicated in any court of competent jurisdiction. * * *"

The manifest purpose of this statute was to provide a means of ascertaining the correctness of expense items each month as they are incurred. The actual expenses paid or incurred constitute the measure of the official's right to recoupment. The monthly itemization is for the protection of the county by affording a means of ascertaining the fact and amount of such claimed item of expense

and whether it was properly chargeable as such. It is manifest from the annual reports and confirmed by the evidence that these expenses were merely estimated and a lump sum given each year. The statute would be of no value if its salutory provisions could be evaded in this manner. We hold the items properly disallowed by the commissioners' court, and the trial court's judgment correct in denying recovery therefor.

Pierson's cross-action relates to claims for the statutory $5 fee in each of 87 inquests asserted to have been held by him during 1935 and 1936, which claims had been disallowed by the county auditor on the ground that the inquests had not been held and the proper record thereof made and certified as the law requires. In all but a very small portion of the disallowed claims the death investigated was from natural causes. There were a few cases of accidental death, and one or two suicides by drowning. The record made and filed by Pierson gave the following information in each case, and no more: Name of deceased; place of death or inquest; age; color; nationality; cause of death. The holding of inquests upon dead bodies is governed by Arts. 968–989 of the Code of Criminal Procedure. Art. 968 gives the circumstances under which the justice is authorized to hold an inquest. Art. 975 reads: "Witnesses shall be sworn and examined by the justice and their testimony reduced to writing by or under his direction, and subscribed by them." Art. 987 reads: "The justice holding an inquest shall certify to the proceedings, and shall enclose in an envelope the testimony taken, the finding of the justice, the bail bonds, if any, and all other papers connected with the inquest, shall seal up such envelope and without delay deliver it properly endorsed to the clerk of the district court, who shall safely keep the same in his office subject to the order of the court."

Art. 1053 provides: "A justice of the peace shall be entitled, for an inquest on a dead body, including certifying and returning the proceeding to the proper court, the sum of five dollars, to be paid by the county. * * *"

In no instance was any witness sworn or any testimony transcribed. Nor was any record made or certified from which the names of the witnesses might be ascertained. Pierson testified that he made an investigation in each case and satisfied himself as to the cause of death, and that there was no evidence of "foul play." Consequently he determined there was no necessity to take testimony or make any record or certificate except that above stated. He testified that in some instances he got his information over the telephone.

Generally speaking, the purpose of a coroner's inquest "is to obtain information as to whether death was caused by some criminal act and to obtain evidence to prevent the escape of the guilty, as well as to furnish the foundation for a criminal prosecution in case death is shown to be felonious." 13 Am.Jur. p. 108. Further from the same text: "It is necessary for a coroner to determine whether a statute contemplates the holding of an inquest in a particular case. * * * Generally speaking, the determination of the question whether an inquest shall be held rests, within certain limitations, in the sound discretion of the coroner."

We think the evidence shows clearly that no inquest was held in any of the disputed cases. All Pierson did was to make an informal investigation to determine whether an inquest was necessary; and having reached the conclusion there was no evidence of "foul play," he determined that question in the negative and held no inquest. The statutory fee is for "an inquest on a dead body, including certifying and returning the proceedings to the proper court." This was not done in any of the disputed instances, and the statutory fee was not earned.

The trial court's judgment is affirmed.

Affirmed.