

# The Attorney General of Texas

May 1, 1985

JIM MATTOX
Attorney General

Supreme Court Building
P. O. Box 12548
Austin, TX. 78711- 2548
512/475-2501
Telex 910/874-1367
Telecopier 512/475-0266

714 Jackson, Suite 700
Dallas, TX. 75202-4506
214/742-8944

4824 Alberta Ave., Suite 160
El Paso, TX. 79905-2793
915/533-3484

*    Texas, Suite 700
h    Jton, TX. 77002-3111
713/223-5886

806 Broadway, Suite 312
Lubbock, TX. 79401-3479
806/747-5238

4309 N. Tenth, Suite B
McAllen, TX. 78501-1685
512/682-4547

200 Main Plaza, Suite 400
San Antonio, TX. 78205-2797
512/225-4191

An Equal Opportunity/
Affirmative Action Employer

Honorable Oscar H. Mauzy
Chairman
Committee on Jurisprudence
Texas State Senate
P. O. Box 12068, Capitol Station
Austin, Texas   78711

Opinion No. JM-313

Re:  Use of the "bad check fund"
under article 53.08 of the Code
of Criminal Procedure by a dis-
trict attorney, county attorney,
or criminal district attorney

Dear Senator Mauzy:

Article 53.08 of the Code of Criminal Procedure authorizes the county attorney, district attorney, or criminal district attorney [hereinafter attorney] to collect fees from persons who have passed "bad checks" and establishes a special fund in the county treasury in which the fees must be deposited. Under article 53.08, the fund is administered by the attorney rather than by the county commissioners court. You ask several questions about the propriety of the attorney's making specific types of expenditures from the fund. Most of the disbursements about which you inquire relate to specific expenses of the prosecutor's office, including payment for office supplies and equipment, for the salaries of various employees, and for certain "bonus" expense allowances and salary supplements. You also ask generally whether the attorney must obtain the approval of the commissioners court prior to making expenditures from the fund. Both this general question and your specific questions, however, depend upon the scope of the statutory authority granted to the attorney by article 53.08. Accordingly, a basic explanation of the provision must precede our response to your specific questions.

Article 53.08 provides, in part:

> (e) Fees collected under this article shall be deposited in the county treasury in a special fund to be administered by the county attorney, district attorney, or criminal district attorney. Expenditures from this fund shall be at the sole discretion of the attorney, and may be used only to defray the salaries and expenses of the pro-secutor's office, but in no event may the county attorney, district attorney, or criminal district attorney supplement his or her own salary from this fund. Nothing in this Act shall be construed

> to decrease the total salaries, expenses, and allowances which a prosecuting attorney's office is receiving at the time this Act takes effect. (Emphasis added).

Two aspects of this section are relevant to your inquiry: the creation of a special fund and the grant of expenditure power to the attorney.

Several prior opinions of this office dealt with article 53.08. See Attorney General Opinions MW-584, MW-439 (1982); MW-241, MW-188 (1980). Controversies over interpretation of the act stemmed from article 53.08's directive that the fund is "to be administered by the county attorney, district attorney, or criminal district attorney" and that "[e]xpenditures from this fund shall be at the sole discretion of the attorney. . . ." Ordinarily, expenditures of county funds are controlled by the county commissioners court. In question 18, you ask whether the attorney must obtain the approval of the commissioners court before making expenditures from the fund. Three prior opinions of this office provide necessary background information and are significant to the scope of the attorney's authority over the fund.

Attorney General Opinion MW-188 (1980) concluded that county auditors may prescribe accounting and control procedures for all fees collected pursuant to article 53.08 despite the fact that the fees were properly to be deposited in a special fund in the county treasury. The opinion found

> no conflict between the district attorney's limited statutory discretion to determine the purpose for which expenditures from the fund are to be made and the auditor's statutory power to prescribe accounting and control procedures for making deposits and disbursements. (Emphasis added).

Thus, the attorney has "limited statutory discretion" over the nature of expenditures from the fund.

Some confusion may have arisen from the language in Attorney General Opinion MW-439 (1982). The opinion concluded that the statutes which require competitive bidding prior to certain county expenditures are not applicable to the special fund created by article 53.08 because the competitive bidding statutes apply only when a county acts through its commissioners court. In Attorney General Opinion MW-439, this office stated that "the hot check fund is explicitly placed beyond the reach of the commissioners court." The rationale for the conclusion was that

> article 53.08 gives the exclusive right to
> administer the hot check fund, and to make
> purchases from it, to county attorneys, district
> attorneys, and criminal district attorneys.

We emphasize that this opinion does not indicate that expenditures by a county officer never fall within the scope of statutes which contain express references to actions taken by the commissioners court. Because county funds have been traditionally administered and expended by the commissioners court, the legislature's reference to actions taken by the commissioners court may, in some instances, be intended to cover generally the expenditure and handling of "county funds."

Despite the broad language in Attorney General Opinion MW-439, this office later held, in Attorney General Opinion MW-584 (1982), that certain reporting statutes are applicable to funds collected pursuant to article 53.08. The opinion indicated that

> although article 53.08 permits a county attorney
> to determine, within certain limitations, the
> purposes for which the funds may be expended, it
> does not convert them into non-public funds.
> Indeed, the statute specifies that the funds may
> be used 'only to defray the salaries and expenses
> of the prosecutor's office,' inarguably a public
> purpose. . . . [S]uch funds are collected for the
> use of the state and county. . . .

Consequently, the opinion concluded that the attorney administering the fund is required to report the collection and disbursement of all funds collected pursuant to article 53.08 in accordance with the directives of certain reporting statutes.

Thus, the answer to question number 18 is clear. The attorney administering the fund need not obtain the approval of the commissioners court prior to making expenditures from the fund. Nevertheless, as stated in Attorney General Opinions MW-188 and MW-584, this statutory discretion is subject to certain limitations. The attorney must administer the fund within the confines of laws applicable to the use of county funds.

You ask the following specific questions:

> 1.  May the county attorney, district
> attorney, or criminal district attorney [herein-
> after 'the attorney'] make expenditures from the
> fund to supplement the salaries of assistant
> prosecutors or other employees? Is the payment of
> salary supplements distinct from expenditures to

defray the salaries of assistant prosecutors or other employees?

2. Is there a salary schedule for assistant prosecutors or other employees of the attorney? Do payments above the scheduled level defray the salary of the employee?

3. May the attorney make expenditures from the fund to defray the salaries and expenses of the entire prosecutors office, or are such expenditures limited to defraying the salaries and expenses of assistant prosecutors or other employees involved in the prosecution of offenses enumerated in article 53.08(a)?

4. May the attorney make expenditures from the fund to pay for Christmas bonuses, or other types of bonuses, for assistant prosecutors or other types of employees?

5. May the attorney make expenditures from the fund to provide for automobile and/or parking allowances for assistant prosecutors or other employees?

6. May the attorney make expenditures from the fund to rent or purchase office equipment? Is the use of this equipment limited to assistant prosecutors and other employees involved in the prosecution of offenses enumerated in article 53.08(a)?

7. May the attorney make expenditures from the fund to pay the expenses of assistant prosecutors who attend continuing legal educational programs? Must these programs relate to the prosecution of offenses enumerated in article 53.08(a), or may programs of any subject matter be funded?

8. Are assistant prosecutors or other employees receiving or benefitting from any expenditure from the fund required to pay federal, state, or local income taxes, including Social Security, on such amounts? Must these taxes be withheld from the assistant prosecutor's or other employee's paycheck?

9. Is the attorney required to spend the entire fund, or may he carry a positive balance from one fiscal year to the next? If the entire fund is not expended, must the balance be turned over to the county at the end of the fiscal year?

10. May the [attorney] make expenditures from the fund to hire staff whose positions are not authorized by the commissioners court?

11. May the attorney make expenditures from the fund to pay for a computerized office security system?

12. May the attorney make expenditures from the fund to pay for the installation of new carpet in the offices of the attorney and the attorney's staff?

13. May the attorney make expenditures from the fund to pay dues of the State Bar of Texas of assistant prosecutors employed by the attorney?

14. May the attorney make expenditures from the fund to pay the college tuition of his secretary?

15. May the attorney make expenditures from the fund to pay for 'management retreats' for members of his staff on dude ranches in the Texas hill country?

16. May the attorney make expenditures from the fund to pay for coffee, doughnuts, or lunch for members of the grand jury?

17. May the attorney make expenditures from the fund to pay for framed color photographs of the grand jury for members of the grand jury?

Because many of these questions are interrelated and because there are a number of them, for clarity the questions will be discussed by topic.

Questions 3, 6, and 7 each raise the issue of whether the fund may be used to defray costs related to the entire office of the prosecuting attorney or to defray only costs attributable to the portion of the office devoted to the prosecution and collection of bad checks as enumerated in article 53.08. Question 9 deals with the disposition of excess funds. What constitutes "excess" funds depends,

in part, upon the scope of expenditure power.  The only guidance provided in article 53.08 with regard to this question appears in section (e).

Section (e) of article 53.08 provides, in part:

> Expenditures from this fund . . . may be used only to defray the salaries and expenses <u>of the prosecutor's office</u>, . . . (Emphasis added).

The fundamental rule governing the interpretation of statutes is to give effect to the intention of the legislature.  <u>City of Sherman v. Public Utility Commission</u>, 643 S.W.2d 681, 684 (Tex. 1983).  To determine the legislature's intent and the purpose for a particular provision, it is proper to consider the history of the subject matter involved, the problem to be remedied, and the ultimate purposes to be accomplished.  <u>Id.</u>

The legislative history and bill analysis of article 53.08 indicate that the provision was intended to make the bad check prosecution and collection process self-supporting.  This fact suggests that expenditures were intended to be made only for expenses related to the prosecution and collection of bad checks.  The collecting of bad checks, however, is an additional function for the attorney's office, the cost of which may not always be clearly apportionable.

The Fiscal Note of the Legislative Budget Board reveals that

> [i]t is not possible because of lack of basic data to estimate the additional revenue which would be collected by county governments should the bill be enacted.

Bill Analysis to House Bill No. 825, Fiscal Note prepared for Committee on Criminal Jurisprudence, filed in Bill File to House Bill No. 825, 66th Leg., Legislative Reference Library (1979).  Thus, it is possible that the legislature did not anticipate that the fund would even cover the cost of processing and collecting checks or bank drafts pursuant to article 53.08, much less provide a source of surplus funds for the state or for the counties.

Nothing in the language of the act, however, expressly limits expenditures to the costs of actually processing and collecting bad checks.  The language of section (e) is broad.  Greater statutory guidance than exists in article 53.08 is necessary to a finding of an implied limit.  The phrase "prosecutor's office" in section (e) suggests the office in general, the whole office.  The primary source of the intent and meaning of a statute is obtained from the actual language of the statute.  <u>City of Sherman v. Public Utility</u>

Commission, 643 S.W.2d at 684. Because of the broad language used in section (e) and because of the lack of any express or implied limit on expenditures from the fund to the costs of effecting article 53.08, we conclude that expenditures are not limited to the costs which are related solely to the prosecution and collection of bad checks. Outlays may be made for the whole prosecutor's office.

Expenditures from the special fund are, however, limited to defraying "the salaries and expenses of the prosecutor's office." In other words, all expenditures from the fund must relate to the official business of the prosecutor's office. There is no requirement that the attorney spend the entire fund; rather, the attorney may spend no more than the amount which is reasonably necessary to defray the salaries and expenses of the office. Any surplus must remain in the fund, subject to the legislature's further direction for disposition. A positive balance may be carried from one fiscal year to the next but such funds remain subject to the limitation to office expenses. Article 53.08 does not require the attorney to pay any excess in the special fund over to the general fund of the county. The attorney must, however, comply with various reporting statutes. See Attorney General Opinion MW-584 (1982) (and statutes cited therein).

Analysis of particular expenditures is two-fold:  (1) whether the expenditure is related to the official business of the office, and (2) whether any other constitutional or statutory provisions prohibit the expenditure. The particular expenditures in question will be discussed in five separate categories:  (I) hiring of new personnel, (II) the payment of salaries and of monetary salary supplements or bonuses, (III) the payment of "in kind" bonuses, (IV) expenditures for equipment and supplies, and (V) expenditures for the members of the grand jury. The propriety of particular expenditures is dependant upon factual conclusions which we do not address here.

I.  Hiring of New Personnel. Article 332a, V.T.C.S., applies to county attorneys, district attorneys, and criminal district attorneys. The act addresses various aspects of personnel matters and expenses of the prosecuting attorneys' offices. Section 2 of the act provides:

> The prosecuting attorney may employ such assistant prosecuting attorneys, investigators, secretaries, and other office personnel as, in his judgment, are required for the proper and efficient operation and administration of the office. (Emphasis added).

Although other sections of article 332a require commissioners court approval, this provision does not. Thus, in response to question 10, the attorney may make expenditures from the fund to hire staff without the prior authorization of the commissioners court.

II. __Payment of salaries and of monetary salary supplements or__
__bonuses.__ Questions 1, 2, and 4 each deal with the payment of salaries
and of certain salary supplements to assistant prosecutors and other
employees of the prosecutor's office. Article 53.08, in subsection
(e), expressly authorizes and limits expenditures from the special
fund "to defray the __salaries__ and expenses of the prosecutor's
office. . . ." (Emphasis added). Thus, the prosecuting attorney may
clearly pay the salaries of the employees of the prosecutor's office
from the fund. Subsection (e) specifically prohibits the county
attorneys, district attorneys, and criminal district attorneys from
supplementing their own salaries from the fund. The propriety of
salary supplements and bonuses for the employees of the attorney's
office depend upon the terms of other statutory provisions.

Article 3912k, V.T.C.S., concerns the salaries of numerous county
employees. Article 3912k does not apply, however, to the employees of
a district attorney, county attorney, or criminal district attorney.
See Attorney General Opinions H-908 (1976); H-656 (1975). The
employees of all three types of prosecuting attorneys fall under the
provisions of article 332a, V.T.C.S. See Attorney General Opinions
H-922 (1977); H-908 (1976). Attorney General Opinion H-908 reasoned
that article 332a is a more specific statute which was enacted later
in time than article 3912k.

Article 332a, in section 5, provides:

> Salaries of assistant prosecuting attorneys,
> investigators, secretaries and other office
> personnel __shall be fixed by the prosecuting__
> __attorney__, subject to the approval of the com-
> missioners court of the county or the counties
> composing the district. (Emphasis added).

Thus, in response to part of question 2, the existence of any "salary
schedule" depends upon the salaries set by the various attorneys'
offices. Because the attorney's power in article 332a is "subject to
the approval of the commissioners court," some clarification of our
response to question number 18 is necessary.

As indicated, article 332a addresses various questions relating
to personnel matters and to other expenses of the attorney's office.
Sections 5 and 6 of the act deal with salaries and travel expenses,
respectively, and each section expressly requires the "approval" of
the commissioners court. In contrast, article 53.08 of the code
places expenditures from the fund within the "sole discretion" of the
prosecuting attorney. Article 332a was enacted in 1973, see Acts
1973, 63rd Leg., ch. 127, at 275, whereas article 53.08 was added to
the Code of Criminal Procedure in 1979. See Acts 1979, 66th Leg., ch.
734, §1, at 1802. Therefore, article 53.08, as the more recent
expression of the legislature's intent, supersedes article 332a to the

extent of conflict, i.e., with regard to expenditures from the special fund. To the extent that salary increases and office expenses may be paid from the special fund, the attorney need not obtain the commissioners court's approval.

Neither article 53.08 nor article 332a, however, addresses the question of salary supplements or bonuses. Clarification of the distinction between salary "increases" and salary "supplements" is necessary at this point. We assume that by "supplements" you mean payments for work that has already been performed by an employee. The two differ. See generally Attorney General Opinion MW-459 (1982). Salary increases are within the discretion of the prosecuting attorney by virtue of section 5 of article 332a. Although the provision requires the "approval of the commissioners court," see Attorney General Opinions H-908 and H-922, to the extent that salary increases may be paid from the special fund, the attorney need not obtain commissioners court approval. The commissioners court may not, however, reduce the amount already authorized for salaries in order to counteract, and thus interfere, with the attorney's "sole discretion" over the fund. See Attorney General Opinion H-922 (1977); see also Code Crim. Proc. art. 53.08(e) ("Nothing in this Act shall be construed to decrease the total salaries . . . which a prosecuting attorney's office is receiving at the time this Act takes effect.").

Nevertheless, salary increases or supplements cannot be retroactive. Article III, section 53 of the Texas Constitution provides, in part:

> The Legislature shall have no power to grant, or to authorize any county or municipal authority to grant, any extra compensation, fee or allowance to a public officer, agent, servant or contractor, after service has been rendered, or a contract has been entered into, and performed in whole or in part. . . .

See also Tex. Const. art. III, §44. Section 53 prohibits the retroactive payment of salary bonuses, supplements, or other salary increases by political subdivisions. Fausett v. King, 470 S.W.2d 770 (Tex. Civ. App. - El Paso 1971, no writ); Pierson v. Galveston County, 131 S.W.2d 27 (Tex. Civ. App. - Austin 1939, no writ); Attorney General Opinion H-11 (1973). Even if district attorneys, county attorneys, and criminal district attorneys are not themselves a "county or municipal authority" for purposes of article III, section 53, the special fund created by article 53.08 is clearly comprised by county funds. See Attorney General Opinion MW-584 (1982). Thus, the attorney administering the special fund may not grant extra compensation, fees or allowances to an employee after the employee's services have been rendered.

In sum, with regard to questions 1, 2, and 4, the payment of salary supplements to employees of the prosecuting attorney's office is distinct from the payment of salaries. Although salary increases or supplements are authorized, payments, by whatever name, which compensate for past work performed by an employee of the office, are prohibited by the Texas Constitution.

III. Payment of "in kind" bonuses. In questions 5, 7, 13, 14, and 15, you ask about expenditures from the fund to pay various allowances and expenses to or for the employees of the attorney's office. The preceding discussion about the constitutional prohibition against the payment of extra compensation to public employees after services have been rendered also applies to "bonuses" which are not directly related to salaries but which are intended or function as added compensation. For example, in question 5 you ask about parking allowances. Paid parking may be a legitimate part of compensation, but when cash "parking allowances" are given directly to employees as a bonus after the employees' services have been rendered, the payments subvert the purpose of article III, section 53. Some of the allowances about which you inquire appear to be added compensation; others fall within the category of reimbursement for expenses properly chargeable against the county.

In general, payments of allowances and expenses for public employees must reasonably relate to the performance of the employee's official duties. See Attorney General Opinions MW-116 (1979); H-1164 (1978); H-152, H-133 (1973); M-978 (1971). Article 53.08, in subsection (e), authorizes the attorney to make expenditures from the fund only for "salaries and expenses of the prosecutor's office." Moreover, article III, section 52 of the Texas Constitution expressly prohibits the use by a political subdivision of its public funds or credit for private purposes. State v. City of Austin, 331 S.W.2d 737 (Tex. 1960); Attorney General Opinion JM-220 (1984). An incidental private benefit from the expenditure of public funds for a public purpose is not prohibited. Barrington v. Cokinos, 338 S.W.2d 133 (Tex. 1960); Attorney General Opinions JM-220 (1984); MW-251 (1980).

In question 5 you ask about "automobile and/or parking allowances." As indicated, parking for employees when they come to work may be a legitimate perquisite of employment. It is not, however, an expense incurred in the performance of the employee's official duty. On the other hand, if the employee's official duties require travel, an "automobile allowance" may be an expense of performing official duties. Article 332a, in section 6, provides:

> Assistant prosecuting attorneys and investigators, in addition to their salaries, may be allowed actual and necessary travel expenses incurred in the discharge of their duties, not to exceed the amount fixed by the prosecuting

> attorney and approved by the commissioners court of the county or the counties composing the district. All claims for travel expenses may be paid from the General Fund, Officers' Salary Fund, or any other available funds of the county. (Emphasis added).

As discussed previously, article 53.08 of the code replaced, to the extent of conflict, the provisions in article 332a which require commissioners court approval. To the extent that legitimate expenses may be paid from the fund, the attorney need not obtain commissioners court approval.

By "automobile allowance," we assume that you refer to a set amount of money paid at certain intervals to defray the cost of operating a privately-owned automobile which is used in the conduct of the employee's official duties. See Attorney General Opinions H-992 (1977); H-152 (1973). If the use of the employee's vehicle is necessary to the actual performance of the employee's official duties, section 6 of article 332a authorizes the payment to assistant prosecuting attorneys and investigators of "actual and necessary travel expenses incurred in the discharge of their duties." Nevertheless, a flat rate automobile allowance which bears no relation to the number of miles actually driven on official business is not authorized. See Attorney General Opinion H-152 (1973).

Question 13 refers to the payment of State Bar dues for assistant prosecutors. In Attorney General Opinion MW-251 (1980), this office determined that a state agency may spend public funds to pay the notary license fees of its employees who provide notary public services as part of their duties. This did not constitute an unconstitutional grant of public funds for a private purpose because the expenditure was directly and substantially related to the performance of the agency's governmental function. Although the payment of bar dues by assistant prosecutors may be necessary to the performance of the assistant's duties, it is an expense related to the individual's profession rather than an "office expense." A distinction must be made between the minimum qualifications for public employment and additional training and/or specialization for additional duties. Accordingly, the attorney may decide to pay the State Bar dues of assistant prosecuting attorneys only as additional compensation, and not as an expense of the office. See generally Attorney General Opinions MW-276, MW-156 (1980); H-1042 (1977); H-289 (1974); C-607 (1966); C-506 (1965).

The same constitutional principles apply to the expenditures you inquire about in questions 7, 14, and 15. Question 7 refers to expenditures from the fund to pay the expenses of assistant prosecutors who attend continuing legal education programs. Such expenditures are authorized insofar as the programs are directly and

substantially related to the performance of the office's governmental functions. See Brazoria County v. Perry, 537 S.W.2d 89 (Tex. Civ. App. - Houston [1st Dist.] 1976, no writ); Attorney General Opinions MW-251 (1980); H-1164, H-1133 (1978). As indicated previously, expenditures must relate to the duties of the prosecuting office but are not limited to the specific prosecuting and collection functions covered by article 53.08. In addition, when expenditures are made which involve potentially substantial incidental private benefits, article III, section 52 requires that conditions be attached to the expenditure to assure the use of public money for a public purpose. Attorney General Opinion JM-220 (1984); see Attorney General Opinions JM-103 (1983); MW-423 (1982); MW-60 (1979). For example, the Brazoria County v. Perry case dealt with a deputy sheriff who attended a law enforcement officer's training program at county expense. The deputy sheriff agreed to reimburse the county for the expense of the program if he did not remain in the employ of the sheriff's department for at least two years after completing the training program.

In question 14 you ask whether the attorney may make expenditures from the fund to pay the college tuition of his secretary. It is conceivable that certain college courses and training programs may be directly and substantially related to the performance of the part of the office's governmental functions which the secretary performs. The payment of college tuition, however, for the general education of the secretary is not authorized. On the other hand, if the college tuition is limited to courses which train the secretary for a different position or additional duties which are part of the performance of the office's governmental function, the expenditure appears legitimate. The Texas Constitution, however, requires that the office attach contractual conditions to the expenditure which will assure that the office will receive the full value of the expenditure, including the value of the expenditure as a "loan" to the secretary.

In question 15, you refer to "management retreats" on dude ranches in the Texas hill country. It is conceivable that a legitimate training or continuing legal education program could be located in the Texas hill country. Nevertheless, if by "retreat" you do not refer to a formal training or education program, but rather an occasion merely to increase the morale and productivity of the attorney's office, it may be nothing more than a private vacation at public expense. As such, it functions as and is subject to the legal limits mentioned above which are applicable to additional compensation. It must be a pre-established part of the employee's compensation.

In question 8 you inquire about the "federal, state, or local income" tax ramifications of these "in kind" benefits. There is, of course, no state or local income tax in Texas. Questions about the federal income tax consequence of the receipt by individual employees of "in kind" bonuses should be addressed to the Internal Revenue

Service. We note, however, that for some purposes, Texas law draws a distinction between expenses and compensation. See Attorney General Opinions JM-39 (1983); MW-391 (1981); cf. MW-334 (1981).

IV. Expenditures for equipment and supplies. In questions 6, 11, and 12 you ask about the propriety of making expenditures from the fund for various types of equipment and supplies. Subsection (e) of article 53.08 expressly provides that expenditures from the fund may be used to defray the "expenses of the prosecutor's office." As indicated previously, expenditures are not limited to the direct costs of effecting article 53.08, but may be used to defray the expenses of the entire prosecutor's office. Nevertheless, expenditures must directly relate to the official duties and functions of the prosecutor's office. Consequently, the attorney may make expenditures from the fund to pay for a computerized office security system and new carpet if those things are reasonably necessary to the performance of the official duties of the prosecutor's office. To the extent that such expenditures can be made from the special fund, the approval of the commissioners court need not be obtained.

V. Expenditures for members of the grand jury. In questions 16 and 17 you ask whether the attorney may make expenditures from the fund to pay for coffee, doughnuts, lunch, and framed photographs for members of the grand jury. These are clearly not expenses of the prosecuting attorney's office. Compare Code Crim. Proc. 1038. Consequently, totally aside from the ethical considerations involved, the attorney lacks the authority to make such expenditures.

                           S U M M A R Y

The county attorney, district attorney, or criminal district attorney who administers the special "bad check" fund created pursuant to article 53.08 of the Code of Criminal Procedure need not obtain the approval of the commissioners court prior to making expenditures from the fund. Expenditures from the special fund are not limited to the costs which are related solely to the prosecution and collection of bad checks; they may be made for the whole prosecutor's office.

Outlays from the fund are, however, limited to defraying the salaries and expenses of the prosecutor's office. Although salary increases and pre-existing "in kind" forms of compensation are authorized, no bonuses, salary supplements, or allowances may be made which operate as additional compensation to an employee after the employee's services have been rendered. An employee may, however, be reimbursed for legitimate expenses

incurred in the performance of the employee's official duties.

The attorney may make expenditures from the fund to pay for office equipment and supplies if they are reasonably necessary to the performance of the official duties of the prosecutor's office. Expenditures for the benefit of members of the grand jury are not authorized.

Very truly yours

JIM MATTOX
Attorney General of Texas

TOM GREEN
First Assistant Attorney General

DAVID R. RICHARDS
Executive Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Jennifer Riggs
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Rick Gilpin, Chairman
Jon Bible
Colin Carl
Susan Garrison
Jim Moellinger
Jennifer Riggs
Nancy Sutton